**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Judith Anne RAUER, a/k/a Judith Anne
McFee, Defendant–Appellant.**

**No. 90–8097.**

United States Court of Appeals,
Tenth Circuit.

April 23, 1992.

LOGAN and BRORBY, Circuit Judges, and OWEN, District Judge.*

Francis Leland Pico, Asst. U.S. Atty., Cheyenne, Wyo. (Richard A. Stacy, U.S. Atty., Aleksander D. Radich, Asst. U.S. Atty., Cheyenne, Wyo., with him on the brief), for plaintiff-appellee.

Susan L. Foreman, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., with her on the brief), for defendant-appellant.

OWEN, District Judge:

Defendant–Appellant Judith Anne Rauer appeals from her conviction by a jury in the District Court for the District of Wyoming on six counts of bankruptcy fraud in violation of 18 U.S.C. § 152.[1] Rauer was sentenced on October 1, 1990 to concurrent terms of one year imprisonment on each count, with all but four months suspended as to Count One and the one-year terms suspended as to the remaining counts.[2]

Rauer moved for new trial. The Court held a post-conviction hearing and denied the motion. Rauer is currently out on bond, having served no part of her sentence.

Defendant seeks a new trial asserting three grounds: the failure of the District Court to order the filing of a psychiatric report following a court-ordered psychiatric examination; the District Court's denial of defendant's motion to dismiss Count 3 of the Indictment for failure to state an offense; and alleged cumulative errors by the District Court regarding the admissibility of evidence. For the reasons discussed hereafter, we affirm.

Judith Rauer and her then-husband Wayne Rauer began operating motels in Wyoming as sole proprietorships in 1982. Things went badly and in January 1987 they filed for Chapter 11 reorganization as individuals. After filing, the Rauers were allowed to continue to operate their motels, as debtors-in-possession, but were required to file reports with the Bankruptcy Court.[3] The reports required disclosure of receipts, disbursements and personal withdrawals for each month as well as a listing of banks or other entities holding money belonging to the bankrupt estate, and the amount deposited or invested. The evidence at trial established that Judith Rauer submitted false reports and had skimmed approximately $50,000 from the bankruptcy estate by removing cash payments from the books and depositing only credit card and check payments, and simultaneously falsifying the "receipts" section of the bankruptcy

---

* Honorable Richard Owen, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. Counts 1 and 2 alleged that Rauer made false declarations in her Chapter 11 monthly financial reports for May and June, 1987, by understating the cash receipts of her business. Count 3 alleged that on July 10, 1987 Rauer concealed a cashier's check from creditors. Counts 4 through 6 alleged that Rauer concealed receipts of her business from creditors.

2. The District Court ordered restitution of $731.00 and a $50 special assessment was imposed on each Count for a total of $300.00. An additional $50,000, allegedly skimmed by defen-

dant from the motel she was operating, had previously been recovered by the Bankruptcy Court during the pendency of its proceedings. No fine was imposed.

3. The Rauers were separated in February or March 1987 and were divorced in May 1987. Although Wayne Rauer worked with Judith Rauer in preparing the bankruptcy petition, following the filing of the petition in January 1987, through the end of the year, Wayne Rauer played very little role in running the motel which is the subject of this Indictment. Judith Rauer handled the daily operations of the motel as well as the financial aspects of the business. Only Judith Rauer is charged in this indictment.

report, stating only those amounts actually deposited in the bank, not the full amount of monies received. Initially, it appears, she simply altered the daily deposit slips and cash reconciliation sheets prepared by her desk clerk, deducting the cash. Later, she made out substitute deposit slips and reconciliation statements, decreasing the figures showing cash receipts and adjusting the sales taxes. Rauer kept two sets of accounting books, one showing actual amounts received by the motel, the other showing the falsified amounts. The accounting alterations which she conducted to hide cash received by the motel involved complex mathematical calculations of room sales figures and sales tax numbers to match the sums of money she took. Rauer used this cash to purchase thousands of dollars worth of cashier's checks, with which she then opened an investment account with Shearson–Lehman in California. The subject of a separate Count was a certain cashier's check from one bank to another, which in fact were refund monies eventually due her on a mortgage overpayment. The jury found this check to be her property—and therefore bankruptcy estate property—and that she opened a bank account with the check in the name of Candi Ramsey, giving a false tax identification number, and subsequently made purchases with checks from this account, signed "Candi Ramsey".

The evidence of skimming being overwhelming, the defense endeavored to raise a serious question as to Rauer's mental condition at relevant times. This had as its basis the fact that just prior to the bankruptcy filing in January 1987, Rauer had been hospitalized for three days for psychiatric problems, including depression. This was attributed to the death of her father and a beloved grandmother a year earlier; her learning that her husband was having an affair three months earlier; and having been raped one month before the said hospitalization.[4] Thus, during pretrial and trial proceedings, the issue of what Rauer would endeavor to prove as to her mental

state was the subject of considerable discussion. On December 15, 1989 Rauer filed a notice of her "intent to introduce expert trial testimony of a mental condition bearing upon the issue of guilt to the charges against her ..." pursuant to Fed. R.Crim.P. 12.2. Rule 12.2 states:

(a) Defense of Insanity. If a defendant intends to rely upon the defense of insanity at the time of the alleged offense, the defendant shall ... notify the attorney for the government in writing of such intention ...

(b) Expert Testimony of Defendant's Mental Condition. If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of guilt, the defendant shall ... notify the attorney for the government in writing of such intention ...

Even though Rauer had *not* asserted an insanity defense, under Rule 12.2(a) above, but had only asserted an intention to introduce expert testimony as to her mental condition under 12.2(b), the government moved for and obtained a mental examination of Rauer pursuant to Fed.R.Crim.P. 12.2(c) and 18 U.S.C. § 4242 which provides:

Upon the filing of a notice, as provided in Rule 12.2 of the Federal Rules of Criminal Procedure, *that the defendant intends to rely on the defense of insanity,* the court, upon motion of the attorney for the Government, shall order that a psychiatric or psychological report be filed with the court ... (emphasis added).

After the examination was performed by the government's psychiatrist, Dr. Arthur N. Merrell, but prior to Merrell's preparing his report, defendant advised the United States Attorney's office that the insanity defense would *not* be asserted, and accordingly, Dr. Merrell never prepared a psychiatric report.

It is claimed on this appeal, however, that the District Court was in error in ruling that Dr. Merrell was not required to submit a psychiatric report, pursuant to 18

---

**4.** These facts were in evidence at the trial and were the basis for Rauer's psychiatric expert's testimony (see note 6 infra). Assuming the jury credited the testimony, it, nevertheless, rejected the impaired "mental condition" defense Rauer sought to establish.

U.S.C. §§ 4242 and 4247, following his court-ordered examination of the defendant, and that the absence of this report hindered defense counsel's ability to effectively represent Rauer and deprived her of her due process rights to a fair trial. We conclude, however, that under the circumstances, no psychiatric report was required and no error was committed.

Throughout pre-trial and trial proceedings, defense counsel expressed uncertainty about whether his client planned to pursue a defense of insanity. The federal law as to insanity, the Insanity Defense Reform Act, 18 U.S.C. § 17, requires a showing, as an affirmative defense, that the defendant, "as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense."

On the day trial began, on February 28, 1990, the Assistant U.S. Attorney, Mr. Pico, informed the District Court of the most recent discussions he had had with defense counsel, Mr. Combs, on this issue:

Mr. Pico: ... I would like to confirm for the record the discussion that we had this morning that Mr. Combs and I have discussed over the past few days the potential insanity defense that may be offered; that the defendant at this time is not quite certain exactly how the defense will be presented, whether it will be an actual insanity defense or whether it will be a defense offered to go to the willfulness or intent element of the offenses, because all of the offenses charged in the Indictment are specific intent crimes; that because of that it's agreed that the way the presentation of evidence will go is that the United States will simply present its case in chief, it will not present any evidence from an expert by way of psychiatric evaluations of the defendant; that if at the appropriate time the defendant elects to present evidence and the defendant further elects to present evidence relating to her either insanity or anything going to the intent elements of the offenses, that the United States would have an opportunity on rebuttal to present evidence along those lines.

Whether or not the defense would present evidence as to Rauer's mental state remained unclear throughout the first three days of trial. At the close of proceedings on Friday, March 2, defense counsel stated that there might be testimony presented the following Monday, March 5, as to Rauer's mental state. That Monday, the Assistant U.S. Attorney informed the Court that he received a call from defense counsel the prior Saturday in which the assistant was advised that there would *not* be psychiatric testimony presented by doctors on Monday. On March 12, 1990, near the close of the government's case in chief and just prior to the defense putting on its case, the Court again questioned defense counsel, Mr. Combs, as to whether defendant intended to rely upon the defense of insanity, and defense counsel again expressed uncertainty, and requested an opportunity to confer with the defense's psychiatrist. At this the Court, on its own, entered a plea of insanity.[5] Later, in a

---

**5.** Mr. Combs: Your Honor, I believe the defense has submitted its notice already of intent to rely on expert testimony concerning mental condition. At this time we do have two mental illness diagnoses by Dr. Merrell and by Dr. Ash. What concerns me is—

The Court: Of course, there is the existence of a mental illness amounts to a defense in this case—it might under Wyoming law, but it sure doesn't under federal.

Mr. Combs: I understand that, Your Honor. I understand that under federal law there are elements to legal insanity ...

\* \* \* \* \* \*

The Court: What I am taking from you then is that at this point you were entering a plea from [sic] insanity.

Mr. Combs: May I confer with my psychiatrist first?

The Court: Why don't we just enter it for you, and I will let you deal with it. I think that would be the easiest way, then Mr. Pico would know at this time, wouldn't you, and you would be able to prepare.

post-trial motion conference, the Court summarized the sequence of events which resulted in a report not being prepared pursuant to § 4247:

> The Court: As I understand, the reason it was not is that, as I recall, there was no plea of insanity that was entered in this case until well after the jury had been impaneled and this case had commenced simply because counsel was trying to make up his mind whether or not to proceed with an insanity defense, and eventually the Court entered one for the defendant so that Dr. Ash could proceed to testify.

■ While defendant claims that the District Court erred in not ordering Dr. Merrell to submit a psychiatric report pursuant to 18 U.S.C. §§ 4242 and 4247, the statute, as discussed earlier, provides that a psychiatric report is required only in situations in which the defendant notices an intention to rely on the specific defense of "insanity". Since Rauer equivocated, and, indeed, never affirmatively asserted the insanity defense,[6] no report was required.

■ Furthermore, Rauer has failed to demonstrate that the Court's order denying the report, denied her access to exculpatory information or that she was in any way prejudiced by the Court's denial of her request for a written report. Prior to trial,

defense counsel was provided with a letter written by Dr. Merrell stating his psychiatric conclusions: "It is my opinion at the time of the commission of her criminal acts that her mental illness was not of sufficient severity to interfere with her capacity to be able to appreciate the nature and quality of those acts."[7] At trial, defendant had the opportunity to call Dr. Merrell as a witness,[8] but chose not to do so. Given the conclusions stated by Dr. Merrell in his letter provided to the court and defense counsel, it is not surprising that the defense chose not to call him.

If not useful to prove insanity, Rauer otherwise asserts that testimony from Dr. Merrell as to Rauer's psychiatric state was necessary to prove that defendant did not have the specific intent required under 18 U.S.C. § 152, in that her mental state was such that she would have been unable to engage in the complex scheme of which she was found guilty. In this regard, although Dr. Merrell testified at the post-trial hearing that he was surprised at her ability to handle complex mathematical calculations, nevertheless, it is undisputed that Rauer *did* in fact complete those tasks.[9]

Accordingly, we hold that no error was committed by the District Court in declining to order Dr. Merrell to file a psychiatric report, and defendant suffered no prejudice as a result.

---

**6.** Even defendant's own expert, Dr. Ash, who testified at the trial, never said she was insane. His outer limit was that she was suffering from a severe mental illness which he never said rendered her unable to appreciate the nature and quality or the wrongfulness of her acts.

**7.** Although Dr. Merrell also testified at the post-trial hearing that Rauer stated to him that she did not think she had done anything wrong, he testified that this statement did not change his conclusion that Rauer was sane at the time of the charged acts.

**8.** Midway through the trial, Dr. Merrell had to leave the country for a previously arranged engagement in Europe. While he was away, he maintained daily contact with the U.S. Attorney and kept himself available for a telephone deposition, in the event the defense sought to depose him.

**9.** Mr. Combs: ... As far as her ability to form any kind of a complex scheme or plan when she was suffering this mental illness, would it be

possible that she had difficulty—she would have had difficulty forming any kind of a scheme or plan of—to deceive or something like that?

Dr. Merrell: The one answer I suppose I would have to give is yes, I think that there would be difficulty in her cognitive powers in a variety of ways, and her cognitive powers with the depression should have been more impaired than I was—than I saw in looking at some of the ways she was able to track figures. In other words, she—information supplied to me tracking the receipts and how accurate they were, I have a big problem in understanding how those could be very accurate, and yet at the same time say that she was cognitively severely impaired. It simply doesn't—it doesn't equate.

\* \* \* \* \* \*

Dr. Merrell: ... It's very hard to argue that the cognitive power is impaired severely to the extent of not knowing the nature and the quality of a criminal act at the same time being able to make additions, to be accurate in math, those simply I could not explain just reasoning.

Second, defendant claims that the District Court erred in refusing to dismiss Count 3 of the Indictment. Count 3 alleged that Rauer violated 18 U.S.C. § 152 by concealing property of the bankruptcy estate, specifically a certain cashier's check for $731.16. Rauer sought to dismiss this Count on the ground that the cashier's check, although in her possession, was not property of her estate as a bankrupt because it was a negotiable instrument drawn by First Wyoming National Bank made payable to West America Mortgage Co. and Rauer was not a party to it. Approximately a year and a half after it was issued, Rauer negotiated the check, using it to open a bank account under the fictitious name of Candi Ramsey, allegedly an agent of West America, to whom the check was made payable. Defendant claims that because she was merely in possession, not the rightful holder of the check, and only was able to negotiate the instrument by illegal and fraudulent conduct, the check was not property of the bankrupt estate.

■ "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This section is broadly construed "to include all property interests, whether reachable by state-law creditors or not, and whether vested or contingent. This definition draws into the estate all of the Debtor's property interests as of the filing date ..." *U.S. v. Cardall,* 885 F.2d 656, 678 (10th Cir.1989) (quoting *In re DeWeese,* 47 B.R. 251, 254 (W.D.N.C.Bankr.1985). Any portion of a debtor's property that is unencumbered by mortgage—the equity—is part of the bankrupt's estate. *First Fed. Sav. & Loan Ass'n of Florida v. AAA Properties of Polk, Inc. (In re Parham),* 72 B.R. 604, 605 (Bankr.M.D.Fla.1987).

■ Prior to filing for bankruptcy, the Rauers had sold their home and West America, the mortgagor for the buyers, paid off the Rauer's mortgage to First Wyoming and paid to the Rauers the balance of their built-up equity. A banker for West America testified that the $731.16 cashier's check was issued by First Wyoming to West America to refund an overpayment to it by West America on the Rauers' loan, and the Rauers were accordingly entitled to the proceeds of the check. On the evidence, the jury could and did find that the cashier's check actually represented a portion of the equity the Rauers had in their home at the time of sale and accordingly, was property of the Rauers' estate, and that by falsely endorsing the check in the name of Candi Ramsey and opening the new account, Mrs. Rauer fraudulently concealed property of the estate.

Defendant further contends that she was prejudiced by evidence of her using the name Candi Ramsey and giving a false tax identification number on a form submitted under penalties of perjury. Defendant concedes, in her opening brief on appeal, however, that, "[t]his evidence and argument was relevant only if the check itself was the property of the estate." Because we find that the cashier's check *was* property of the estate, the evidence presented supported the charge of concealment, and this evidence was properly received.

Finally, defendant contends that cumulative errors by the District Court regarding the admissibility of evidence warrant reversal of her convictions. We find no abuse of discretion by the District Court in its evidentiary rulings and no merit to this point.

Accordingly, the conviction is affirmed.