**UNITED STATES of America, Plaintiff,**

v.

**Montgomery AKERS and Lynn Durlin, Defendants.**

**Criminal No. 96–CR–13–B.**

United States District Court, D. Colorado.

Nov. 4, 1996.

Henry L. Solano, United States Attorney, and Mark Barrett, Assistant U.S. Attorney, Denver, CO, for Plaintiff.

M. David Lindsey, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Pending before me are Defendant Lynn Durlin's (Durlin) motion to dismiss the indictment due to prosecutorial misconduct before the grand jury and the government's motion for independent psychiatric or psychological evaluation. For the following reasons, I will deny both motions.

### I.

The second superseding indictment, containing three counts, is brought against co-defendants Montgomery Akers (Akers) and Lynn Durlin. The initial indictment in this case was filed on January 23, 1996 against defendant Akers only and charged him as follows:

Count One:

In or about July, 1994, in the State and District of Colorado, the defendant, Montgomery Akers did knowingly make, utter and possess a counterfeit security of an organization, that is, a counterfeit Coastal Corporation check, bearing number 983584, dated July 23, 1994, drawn on Citibank Delaware, in the amount of $34,550, with intent to deceive another. All in violation of Title 18, United States Code, Section 513(a).

On May 22, 1996, a superseding indictment was filed in which Akers and co-defendant Durlin were charged as follows:

Count One:

1. From on or about April 7, 1994, until June 20, 1994, in the State and District of Colorado and elsewhere, the defendants, MONTGOMERY AKERS, and LYNN DURLIN, aided and abetted by each other, did knowingly execute a scheme to defraud the Credit Union of Denver, 9305 W. Alameda Parkway, Lakewood, Colorado (hereinafter "the Credit Union"), a financial institution whose accounts were insured by the National Credit Union Association and to obtain money and property under the custody and control of the Credit Union by means of false and fraudulent pretenses, representations and promises.

2. It was in execution and in furtherance of the scheme that on or about April 7, 1994, LYNN DURLIN, defendant herein, opened a business account for Advantage Commercial Investments at the Credit Union which listed her, LYNN DURLIN, as the sole proprietor of this business and the only individual authorized to manage this account.

3. It was in execution and in furtherance of the scheme that checks were obtained by means of false pretenses by MONTGOMERY AKERS, defendant herein, from Cycles West, 10625 W. I-70 Frontage Road North, Wheatridge, Colorado, including but not limited to check # 8499 dated May 16, 1994; check # 8498, dated May 23, 1994; and check # 8497 dated May 30, 1994 and made payable to "Advantage Commercial Investments", and were deposited into the Advantage Commercial Investment account at the Credit Union.

4. It was in execution and in furtherance of the scheme, that from May 18, 1994 through June 20, 1994, LYNN DURLIN, defendant herein, wrote checks on the Advantage Commercial Investment account at the Credit Union made payable to MONTGOMERY AKERS. All in violation of Title 18, United States Code, Sections 1344 and 2.

In Count Two of the superseding indictment, co-defendant Akers was charged with the count denominated "Count One" in the original indictment.

In September, 1996, co-defendant Akers absconded from the halfway house in which he was residing. Based on this, the government filed a second superseding indictment in which Counts One and Two are identical. However, the government added Count Three against Akers for failure to appear in violation of 18 U.S.C. §§ 3146(a)(1) and (b)(1)(A)(i).

## I.

*Motion to Dismiss Indictment due to Prosecutorial Misconduct before the Grand Jury*

■ Durlin seeks dismissal of the superseding indictment based on prosecutorial misconduct before the grand jury. Pursuant to court order, all documents in connection with the motion to dismiss are filed under seal of the Court.

Durlin cites several allegations of improper conduct which, according to her, improperly influenced the Grand Jury and caused prejudice to her. These include "coercive, inflammatory, and prejudicial conversations with members of the Grand Jury" by the prosecutor which includes "unsolicited, [incorrect] recollection of previous testimony." Durlin also alleges that the prosecutor engaged in improper conversation with members of the Grand Jury aimed at ascertaining what type of indictment they would be willing to sign. Durlin also argues that the prosecutor interfered with the deliberative process of the Grand Jury by arguing the evidence. Durlin seeks dismissal because the prosecutor's conduct creates "grave doubt that the decision to indict was free from the substantial influence of such violations." Def. Motion to Dismiss Memo. p. 4–5.

An indictment can be dismissed only for prosecutorial misconduct that results in "some significant infringement on the grand jury's ability to exercise independent judgment." *United States v. Pino*, 708 F.2d 523, 530 (10th Cir.1983). "[A] district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendan[t]." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988); *United States v. Edmonson*, 962 F.2d 1535, 1539 (10th Cir. 1992). When prosecutorial misconduct is charged, an indictment may only be dismissed if it is shown "that such conduct significantly infringed on the ability of the grand jury to exercise independent judgment." *Id.* (quoting *United States v. Cederquist*, 641 F.2d 1347, 1353 (9th Cir.1981)). "This 'presumption of regularity' given to all grand jury proceedings is a difficult burden to overcome and requires very significant

misconduct on the part of the prosecutor...." *Edmonson*, 962 F.2d at 1539.

After reading the portions of the grand jury transcripts submitted by Durlin, I am not persuaded that the prosecutor's comments alleged by Durlin to be prejudicial are sufficiently inflammatory to warrant dismissal of the indictment. Moreover, the prosecutor informed the grand jury that if their recollection of testimony was different than his, their recollection controlled. On two occasions, the prosecutor confirmed that he had no part in their deliberations and informed the jury that after deliberating, the decision to return a true bill or not rested with them. Indeed, at one point the prosecutor cautioned against deliberating in the presence of the prosecutor and a testifying witness. In light of these circumstances, I am not persuaded that there was prosecutorial misconduct that significantly infringed on the ability of the grand jury to exercise its independent judgment.

## II.

*Government's Motion for Independent Psychiatric or Psychological Evaluation*

■ Pursuant to Fed.R.Crim.P. 12.2(c), the government seeks an independent psychiatric or psychological evaluation of Durlin based on her stated intention to introduce expert testimony relating to a "mental condition of the defendant bearing upon the issue of guilt." ¶ 1 Def.Supp.Fed.R.Crim.P. 12.2(c) notice. Durlin contends that the government is not entitled to an independent evaluation because she does not intend to introduce expert testimony relating to a "mental disease or defect" and she will not be raising the defense of insanity or competence to proceed to trial. *Id.* For the following reasons, I will deny the government's motion.

In July, 1996, Durlin filed a Fed.R.Crim.P. 12.2(b) notice couched in general terms. On September 16, 1996, Durlin filed an *ex parte* motion for a protective order, granted by the court on October 3, 1996, concerning a mental examination of Durlin conducted at her attorney's behest. Durlin disclosed the results of the examination to the government. On October 8, 1996 the government filed a

motion for independent evaluation to determine existence of a mental defect pursuant to 18 U.S.C. § 4241(a). On October 15, 1996, Durlin filed a motion objecting to the government's motion for independent evaluation. The next day Durlin filed a supplemental notice pursuant to Fed.R.Crim.P. 12.2(b) stating:

1. The Defendant intends to introduce expert testimony relating to a mental condition of the Defendant bearing upon the issue of guilt. The Defendant does not intend to introduce expert testimony relating to a mental disease or defect, and she will not be raising the defense of insanity at the time of the alleged crime nor competence to proceed to trial.

2. The Defendant specifically intends to introduce expert testimony relating to a mental condition bearing upon the issue of guilt as follows:

a. as a result of the Defendant's mental condition, the Defendant honestly held the belief that the actions giving rise to this indictment were not a violation of the law; and as such the Government cannot carry its burden of establishing the requisite mental state.

The government responded on October 22, 1996 and, pursuant to Durlin's specific Rule 12.2(b) notice, changed its basis for seeking the independent examination from § 4241 to Rule 12.2(c). The government also argues that pursuant to 18 U.S.C. § 17, other than examinations performed to determine mental competency to stand trial or the existence of insanity at the time of the alleged offense, any other expert testimony relating to a mental condition bearing upon the issue of guilt is irrelevant. Also, the government argues that Durlin's mental condition may constitute an affirmative defense and, thus, an independent evaluation is required.

Federal Rule of Criminal Procedure 12.2, titled "Notice of Insanity Defense or Expert Testimony of Defendant's Mental Condition," provides the procedure to be followed when a defendant wishes to employ a diminished mental capacity defense. Rule 12.2(a) states that a defendant intending to rely upon an insanity defense must so notify the government in writing in advance of trial. Rule 12.2(b), titled "Expert Testimony of Defendant's Mental Condition," provides for notice to the government if a defendant intends to introduce expert testimony relating to a mental condition, presumably other than insanity.

At the motion hearing, defense counsel stated that he has no basis to question his client's sanity or competency to proceed. Moreover, during the several court hearings I have presided over at which Ms. Durlin was present, I have observed nothing to call into question her competency to proceed or her sanity.

Before I reach the question whether I have the authority to order a psychiatric or psychological examination pursuant to Rule 12.2(c), I address the issue raised by the government whether mental condition evidence survives the enactment of the Insanity Defense Reform Act of 1984; 18 U.S.C. § 17.

In the Insanity Defense Reform Act, Congress provided a statutory formulation of the insanity defense for the first time:

(a) Affirmative defense.—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

In several cases, the government has relied on the language stating that apart from insanity "mental disease or defect does not otherwise constitute a defense" to claim that the Act bars a defendant from using evidence of mental abnormality to negate *mens rea.* The courts addressing this issue have held that mental condition evidence is admissible under two conditions. First, such evidence may be admitted not as an affirmative defense to excuse the defendant from responsibility for his acts, but to negate specific intent when that is an element of the charged act itself. *See United States v. Cameron,* 907 F.2d 1051, 1060 (11th Cir.1990); *United States v. Pohlot,* 827 F.2d 889, 906 (3rd Cir. 1987), *cert. denied* 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988). Second, the

experts' testimony is limited to their "'diagnoses, the facts upon which those diagnoses are based, and the characteristics of any mental diseases or defect the experts believe the defendant possessed during the relevant time period,'" staying clear of "'directly or indirectly opining on the [ultimate] issue of specific intent.'" *United States v. Gold*, 661 F.Supp. 1127, 1132 (D.D.C.1987) (quoting *United States v. Frisbee*, 623 F.Supp. 1217, 1223 (N.D.Cal.1985)).

■ Based on the reasoning in these cases, I conclude that if the charged crime is a specific intent crime, a defendant may submit relevant mental condition evidence in an attempt to negate this element. *United States v. Childress*, 58 F.3d 693, 728–29 (D.C.Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 825, 133 L.Ed.2d 768 (1996).

In this case, Durlin is charged with:

knowingly execut[ing] a scheme to defraud the Credit Union of Denver, 9305 W. Alameda Parkway, Lakewood, Colorado (hereinafter "the Credit Union"), a financial institution whose accounts were insured by the National Credit Union Association and to obtain money and property under the custody and control of the Credit Union by means of false and fraudulent pretenses, representations and promises.

in violation of Title 18, United States Code, Sections 1344 and 2.

In order to convict the defendants of bank fraud under 18 U.S.C. § 1344, the government is required to prove, *inter alia*:

(1) that the defendant knowingly executed a scheme

   a. to defraud, or

   b. to obtain money and property by means of false and fraudulent pretenses, representations or promises;

(2) with the intent to defraud.

*United States v. Rackley*, 986 F.2d 1357, 1360–61 (10th Cir.1993); *United States v. Bonnett*, 877 F.2d 1450 (10th Cir.1989).

■ In the 10th Circuit, "intent to defraud" means "to act willfully and with the specific intent to deceive or to cheat...." *United States v. Sealander*, 91 F.3d 160, 1996 WL 408368 *5, *6 (10th Cir.1996); *see Unit-*

*ed States v. Orr*, 68 F.3d 1247, 1251 (10th Cir.1995) (in 18 U.S.C. § 1344 bank fraud case, defense was that defendant was acting in good faith without any specific intent to defraud); *United States v. Haddock*, 12 F.3d 950, 959 (10th Cir.1994) (specific intent jury instruction given in trial for violation of 18 U.S.C. § 1344); *United States v. Ratchford*, 942 F.2d 702, 706 (10th Cir.1991) (in 18 U.S.C. § 1344 bank fraud case, jury instructed that government must prove defendant acted "with the specific intent to defraud"). As a matter of law, bank fraud pursuant to 18 U.S.C. § 1344 is a specific intent crime. Thus, mental condition evidence is relevant to negate the *mens rea* element of the crime charged.

■ I now turn to the more difficult question presented here whether Rule 12.2(c), with its reference to 18 U.S.C. § 4242, a section explicitly limited to cases involving an insanity defense, authorizes a court to order a mental examination of a defendant who intends to rely on a mental condition defense other than insanity.

*United States v. Davis*, 93 F.3d 1286 (6th Cir.1996) provides comprehensive and persuasive analysis of this question which I will apply and follow here. In *Davis*, the defendant filed an interlocutory appeal from the district court's decision to commit her for 45 days for a psychiatric and psychological examination pursuant to Rule 12.2 and 18 U.S.C. § 4242. *Id.* at 1288. Like Durlin, Davis gave notice of her intent "to introduce expert testimony relating to a mental disease or defect or any other mental condition ... bearing on the issue of guilt." Fed. R.Crim.P. 12.2(b). Also like Durlin, Davis disclaimed any intent to rely on the defense of insanity. *Id.* at 1291.

For purposes of analysis, the 6th Circuit separated the question whether the district court was authorized to order any examination at all from the question whether the district court was authorized to commit the defendant for the examination. The court noted that "[l]ogically, the second question cannot be reached until the first question is answered affirmatively." *Id.* at 1290. The 6th Circuit then addressed whether the court was authorized to order a psychiatric examination under 18 U.S.C. § 4242 and Rule 12.2.

Specifically, the court looked at the language of Rule 12.2(c), the structure of the rule, "syntactic structure of the first sentences of subdivisions (a) and (b)", *id.* at 1292–94, as well as the Advisory Committee Notes to the 1983 Amendments. The Court noted that its analysis was sensitive to its concern that the issue implicates a defendant's Fifth Amendment right against self-incrimination and Sixth Amendment rights to counsel and to compel witnesses in defendant's favor. *Id.* at 1290–91, fn.1–3.

*18 U.S.C. § 4242*

18 U.S.C. § 4242 requires a district court to order a psychiatric or psychological examination of the defendant on the motion of the government "[u]pon the filing of a notice, as provided in [Fed.R.Crim.P. Rule 12.1(a)] that the defendant intends to rely on the defense of insanity." As with Davis, Durlin has specifically disclaimed any intent to rely on the defense of insanity, limiting her notice of intent to "introduc[ing] expert testimony relating to a mental disease or defect or any other mental condition ... bearing on the issue of guilt." Fed.R.Crim.P. 12.2(b).

■ By its plain terms, section 4242 neither permits nor requires a court-ordered examination by the government regarding the defendant's "mental condition" at the time of the charged offense. *Davis,* 93 F.3d at 1291; *see United States v. Marenghi,* 893 F.Supp. 85, 99 (D.Me.1995).

*Criminal Rule 12.2(c)*

The government's request for an independent examination of defendant is based on Rule 12.2(c). However, as noted in *Davis,* the structure of Rule 12 is pivotal in this analysis. Fed.R.Crim.P. Rule 12 provides:

(a) Defense of Insanity.

If a defendant intends to rely upon the defense of insanity at the time of the alleged offense, the defendant shall, within the time provided for the filing of pretrial motions ... notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. If there is a failure to comply with the requirements of this subdivision, insanity may not be raised as a defense. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

(b) Expert Testimony of Defendant's Mental Condition.

If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of guilt, the defendant shall, within the time provided for the filing of pretrial motions ... notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

(c) Mental Examination of Defendant.

In an appropriate case the court may, upon motion of the attorney for the government, order the defendant to submit to an examination pursuant to 18 U.S.C. § 4241 or 4242. No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, no testimony by the expert based upon such statement, and no other fruits of the statement shall be admitted in evidence against the defendant in any criminal proceeding except on an issue respecting mental condition on which the defendant has introduced testimony.

(d) Failure to Comply.

If there is a failure to give notice when required by subdivision (b) of this rule or to submit to an examination when ordered under subdivision (c) of this rule, the court may exclude the testimony of any witness offered by the defendant on the issue of the defendant's guilt.

(e) Inadmissibility of Withdrawn Intention.

Evidence of an intention as to which notice was given under subdivision (a) or (b), later withdrawn, is not, in any civil

or criminal proceeding, admissible against the person who gave notice of the intention.

As in *Davis*, the government argues that a defendant who gives notice of intent to introduce expert testimony may be "an appropriate case" under Rule 12.2(c) allowing a court to order "an examination pursuant to 18 U.S.C. § 4241 or 4242." The government points to the similar syntax of subdivisions (a) and (b) to support their request for an independent examination of Durlin. However, the similarities concern only the timing and manner of notice. This similarity in "mechanics" cannot, without more, form the basis for similarity in results; a compelled psychiatric or psychological examination. *See Davis*, 93 F.3d at 1292.

The plain terms of Rule 12.2(c) provide for a compelled examination of defendant pursuant to 18 U.S.C. § 4241 (competency) or § 4242 (insanity). Rule 12.2(c) does not mention compelled examinations when a defendant gives notice of intent to otherwise present expert testimony regarding her mental condition. Several courts have ordered such an examination based on their interpretation of the Advisory Committee Notes to Rule 12.2(c) which state, in pertinent part:

> Because it is possible that the defendant will submit to examination by an expert of his own other than a psychiatrist, it is necessary to recognize that it will sometimes be appropriate for defendant to be examined by a government expert other than a psychiatrist.

I agree, however, with the *Davis* court interpretation of this language:

> [t]his commentary addresses the kinds of expert testimony the defendant might seek to introduce, and the kind of expert examination the government might seek, not the circumstances under which a defendant could be compelled to submit to an examination.

*Davis*, 93 F.3d at 1294. I conclude this commentary provides no insight into the question whether Rule 12.2(c) authorizes a court to order an examination of a defendant who gives notice of intent to introduce expert testimony on her "mental condition."

I am also persuaded by the 6th Circuit's observation about the absence of *any* language in Rule 12.2 authorizing a court ordered examination of a defendant relying on a mental condition other than insanity:

> we find it unlikely that the Supreme Court or Congress intended the first sentence of Rule 12.2(c) to resolve, *sub silentio*, the Fifth Amendment concerns arising from a compelled, custodial pretrial examination of a criminal defendant concerning her or his mental state at the time of the alleged offense—an element of the crime which the government bears the burden of proving.

*Id.* at 1295.

Although other circuits appear, at first glance, to authorize compelled psychiatric examinations of defendant pursuant to Rule 12.2(c), upon closer reading, they do not squarely resolve the issue.

In *United States v. Rauer*, 963 F.2d 1332 (10th Cir.1992), defendant asserted an intention to introduce expert testimony as to her mental condition under Rule 12.2(b). The government moved for and obtained her mental examination pursuant to Rule 12.2(c). After the government's psychiatrist examined Rauer, but before he prepared his report, the defense advised the government that it would not be asserting an insanity defense. The government psychiatrist never prepared a report. On appeal, defendant claimed the District Court erred in not requiring the psychiatrist to submit a report. The 10th Circuit did not analyze or address whether the District Court's order of a government psychiatric examination of defendant was valid. Thus, *Rauer* provides no guidance in this case.

Similarly, in *United States v. Halbert*, 712 F.2d 388 (9th Cir.1983), the District Court ordered a psychiatric examination of the defendant pursuant to Rule 12.2(c). On appeal, the 9th Circuit discussed the issue whether Rule 12.2(c) and Halbert's Fifth Amendment right against self-incrimination were violated when the examining psychiatrist testified to statements Halbert had made during the court-ordered examination. The 9th Circuit did not address, in dicta or otherwise, the central question of the District Court's authority to order psychiatric examination of defendant.

In *United States v. Buchbinder*, 796 F.2d 910 (7th Cir.1986), defendant did not plead

he was insane. At trial, however, he asserted the defense that he was extremely depressed at pertinent times and, thus, could not formulate the specific intent to defraud. The defendant attempted to introduce testimony of a psychiatrist and a psychologist each of whom had examined him immediately before trial. The district court did not allow the testimony because defendant had not given the government timely notice pursuant to Fed.R.Crim.P. 12.2(b). The 7th Circuit affirmed the district court's refusal to allow the defense experts to testify when the defendant failed to give timely notice as required by Rule 12.2(b). In its discussion of the notice issue the 7th Circuit stated:

> [i]t is evident that the government did not have sufficient time prior to trial to have the defendant examined by its own expert witnesses and to prepare psychiatric testimony of its own concerning the defendant's condition to rebut the defense expert's testimony if necessary.

*Buchbinder,* 796 F.2d at 915. Although this statement indicates that the 7th Circuit would authorize compelled psychiatric examinations of defendant pursuant to Rule 12.2(c), it is dictum.

Application of *Davis* to the circumstances of this case leads me to conclude that I have no authority, pursuant to 18 U.S.C. §§ 4241 and 4242 or Rule 12.2(c) to order a psychiatric examination of Durlin at the request of the government. Moreover, while not mentioned in *Davis,* to the extent Rule 12.2(c) may be ambiguous in its grant of authority for the examination sought here, application of the rule of lenity dictates denial of the government's motion. *United States v. Decker,* 55 F.3d 1509, 1513 (10th Cir.1995). Accordingly, I will deny the government's motion for independent psychiatric or psychological evaluation.

The government stated in oral argument that it would be unfair to allow defendant to offer an expert witness to testify to Durlin's mental condition without providing the government an opportunity to rebut such evidence. However, as pointed out by the 6th Circuit, given defendant's Rule 12 notice, the government can prepare to rebut the testimony of the defense expert witness in a variety of ways. The government may, *inter*

*alia,* retain its own expert to review and assess the defense expert's report, to attend the trial, to testify about his/her evaluation of the report, and testify as to his/her observations of the defendant. It may also call lay witnesses to rebut the expert's testimony about any relevant characteristics of the defendant. Indeed, the government's rebuttal of the defense expert's testimony is limited only by its own creativity and the application of the Federal Rules of Evidence.

Accordingly, it is ORDERED that:

1. defendant Durlin's motion to dismiss indictment due to prosecutorial misconduct before the grand jury is DENIED; and

2. the government's motion for independent psychiatric or psychological evaluation is DENIED.