**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Margaret Knape DAVIS, Defendant–
Appellant.**

No. 96–1156.

United States Court of Appeals,
Sixth Circuit.

Argued March 29, 1996.

Decided Aug. 26, 1996.

Michael A. MacDonald, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, for Plaintiff–Appellee.

Mayer Morganroth (briefed), Morganroth & Morganroth, Southfield, MI, Nathan Z. Dershowitz (argued), Dershowitz & Eiger, New York City, for Defendant–Appellant.

Before: NORRIS and SUHRHEINRICH, Circuit Judges, WELLS,* District Judge.

WELLS, District Judge.

This is an interlocutory appeal from a decision of the district court requiring defendant-appellant, Margaret Knape Davis, to self-surrender at Federal Medical Center ("FMC") Carswell in Fort Worth, Texas, for a forty-five day period of psychiatric and psychological examination. We conclude the district court lacked authority to order the commitment and examination of the defendant under either Criminal Rule 12.2(c) or 18 U.S.C. §§ 4241 and 4242. However, under the circumstances of this case, we hold the district court has the inherent authority to order a reasonable non-custodial examination of the defendant concerning her mental condition at the time of the offense. Therefore, we **REVERSE** the district court's order and **REMAND** this case for further proceedings.

## I. HISTORY OF PROCEEDINGS

Defendant is charged in fourteen counts of a fifteen count superseding indictment filed November 28, 1995. The superseding indictment charges her with wire fraud, uttering, possessing counterfeit and forged securities, and conspiracy to defraud, based on events which occurred between 1992 and 1995.

---

* The Honorable Lesley Brooks Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

On December 21, 1995, defendant gave notice that she intended "to offer the defenses of diminished capacity and/or mental disease and/or defect and/or incapacity to form specific intent" pursuant to Fed.R.Crim.P. 12.2(b). Five days later, the government filed a motion to commit the defendant for a pretrial psychiatric examination for competency and insanity, and to review the conditions of the defendant's bond. In response to this motion, defendant stated she had no objection to a sanity or a competency examination, but objected to commitment for that purpose.

At a pretrial conference on January 5, 1996, the district court heard oral argument regarding the government's motion to commit the defendant for psychiatric examination. In an oral ruling, the district court stated, "[t]here is no question but that the government is entitled to a mental examination of the defendant pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure and 18 U.S.C. 4242," noting that "[t]he defendant does not ... even challenge that." "The issue," said the district court, "is whether the defendant must or may be placed in custody for the purpose of conducting an evaluation for a period of at least 45 days." The court further noted it was "looking for some evaluation which would consider both issues of competence to stand trial and the issue of her mental capacity."

The government had stated three reasons for requesting commitment: "economics," "the nature of the crime itself," and "obtaining an equal field regarding the ability to watch [the defendant] around the clock." The district court stated it was "impressed with the economics argument, but not as impressed with it as ... with the other two arguments made":

I am more persuaded by the argument made that the examination has to be cognizant of the fact that the claim of diminished capacity covers a long period of time and specific periods of time, which based on my experience with psychologists in the past has been difficult to do.... [The government] is entitled to have an input, medical input, and Ph.D. psychological input regarding the diminished capacity of

defendant over a period that might go as far back as 1988, but at least goes back as far as three years.

More importantly, it seems to me that the government seeks a level playing field. Mr. Morganroth [defendant's counsel], to his credit, admits that he would call the treating psychiatrist. It is clearly reasonable to this Court that a jury would be impressed by a treating psychiatrist, and that the psychiatrist who treats her or sees her, evaluates her on an outpatient basis won't have the same ability.

The Court believes that the Justice Department is entitled to some close observation of this defendant on an around-the-clock basis, and with teams that include both psychologists and psychiatrists.

* * * *

I am going to order that she be committed for 45 days pursuant to the statute for the reasons that I have set forth....

The district court ordered the defendant to surrender voluntarily at FMC Carswell, Texas, on January 22, 1996, for a forty-five day period of psychiatric and psychological examination.

Defendant moved the district court to reconsider its involuntary commitment order or to stay the order for twenty-one days to permit the defendant to seek appellate review. Attached to the motion was a letter from the defendant's treating psychiatrist, Steven H. Berger, M.D., who stated, among other things, that in his judgment the defendant "understands (1) the nature of the charges against her, (2) the possible consequences if found guilty, and (3) the role that her attorneys have in representing her in her defense."

The district court denied the motion to reconsider, but granted the motion for a stay until February 12, 1996, to allow the defendant to appeal to this Court. Following oral argument in this matter, this Court stayed the order of commitment pending this appeal.

II. JURISDICTION

The district court's commitment order was not a "final order" appealable under 28

U.S.C. § 1291. The government therefore contends this Court lacks jurisdiction over this appeal.

In criminal cases in particular, the final judgment rule is strictly applied to ensure the prompt adjudication of criminal charges. *Flanagan v. United States,* 465 U.S. 259, 264–65, 104 S.Ct. 1051, 1054–55, 79 L.Ed.2d 288 (1984). However, the collateral order doctrine permits an interlocutory appeal from a narrow class of non-final orders which "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). To come within this "narrow exception," the order must, "at a minimum," meet three criteria:

> First, it "must conclusively determine the disputed question"; second, it must "resolve an important issue completely separate from the merits of the action"; third, it must be "effectively unreviewable on appeal from a final judgment."

*Flanagan,* 465 U.S. at 265, 104 S.Ct. at 1055.

An order of commitment for psychiatric examination easily satisfies the requirements of the collateral order doctrine. First, the order here conclusively determines (a) there should be an examination of the defendant's competency to stand trial, and (b) the government is entitled to an examination of the defendant's mental state at the time of the offense. While the district court order did not finally decide the defendant's competency or mental capacity at the time of the offense, the decisions reached are sufficiently conclusive to have been relied upon by the district court in ordering a forty-five day period of involuntary commitment, a serious consequence itself. *United States v. Weissberger,* 951 F.2d 392, 396 (D.C.Cir.1991). These issues are completely independent from the issue of the defendant's guilt or innocence of the crimes charged. Finally, the loss of liberty occasioned by the commitment for examination, and the forced intrusion of a court-ordered psychiatric examina-

tion, are completely unreviewable by the time of final judgment. Appellate review after final judgment would be available only if the defendant is found guilty, and even then, no effective relief could be provided for her loss of liberty during the period of commitment. *United States v. Weissberger,* 951 F.2d 392, 396 (D.C.Cir.1991); *United States v. Gold,* 790 F.2d 235, 239 (2d Cir.1986) (discussing unreviewability of an order of commitment); *see United States v. White,* 887 F.2d 705, 707 (6th Cir.1989) (implicitly recognizing proper exercise of jurisdiction over appeal from order of commitment to determine competency).

Therefore, the district court's order of commitment falls within that narrow class of cases reviewable on interlocutory appeal under the collateral order doctrine, and this Court has jurisdiction over the instant appeal. We now turn to the merits of the defendant's appeal.

### III. LAW AND ANALYSIS

Defendant presents three issues for review. First, defendant argues that a defendant who gives notice of her intent to present psychiatric evidence of her mental state at the time of the offense is not subject to pretrial commitment for examination under Fed.R.Crim.P. 12.2(c) or under 18 U.S.C. § 4242, because those provisions only authorize psychiatric examination concerning the defendant's *sanity,* which is not at issue here. Second, defendant claims the district court erred by ordering her committed for a competency examination, because there was no evidence in the record to support a determination of reasonable cause to question the defendant's competency, nor was there any showing that commitment was necessary to perform a competency examination. Finally, defendant asserts her involuntary commitment for forty-five days violates her fifth amendment right to due process.

### A. *Competency Examination*

We first address defendant's contention that the district court erred by committing her for a competency examination. The government moved the district court for an ex-

amination of the defendant's competency, asserting the defendant's notice of intent to present expert testimony regarding her mental state provided reasonable cause to question her competency. Based on the government's motion, the district court ordered defendant committed for a "psychiatric and psychological examination for her competency to stand trial." The government has not responded to defendant's argument that this order was erroneous.

■ The district court could order a competency examination only if it found "reasonable cause to believe" the defendant was incompetent. 18 U.S.C. § 4241(a). There was little evidence in the record to support such a finding here. The defendant's assertion of "mental incapacity" at the time of the offense did not permit or require an examination of her present competency. Although there is some suggestion in the record that the defendant is currently under psychiatric care, even if she were mentally ill, "[i]t does not follow that because a person is mentally ill he is not competent to stand trial." *Newfield v. United States*, 565 F.2d 203, 206 (2d Cir.1977), *cited with approval in United States v. Collins*, 949 F.2d 921, 925 (7th Cir.1991).

■ Defendant's lack of objection to a competency examination does not justify the order. Even if the defendant herself requests an examination, the district court has an independent obligation to determine whether there is reasonable cause to question her competency before ordering an examination, particularly when the order subjects the defendant to involuntary commitment. *Collins*, 949 F.2d at 925. The district court here erred by ordering a competency examination without first finding reasonable cause to believe the defendant was incompetent.

The district court did not address the competency examination at all in his ruling on the defendant's motion for reconsideration, despite the attached letter from the defendant's treating psychiatrist, who concluded she was competent. Even if we assume the district court had reasonable cause to

question the defendant's competency when it issued its order of commitment, this new evidence required at a minimum that the district court weigh the competing evidence and determine whether reasonable cause continued to exist. Absent a reasonable ground to question the treating psychiatrist's conclusion, the district court was not justified in continuing to question defendant's competency.

Therefore, the district court erred by denying the motion for reconsideration with respect to the order for a competency evaluation.

### B. *Examination Regarding Mental State at the Time of the Offense*

More complex issues are presented by the defendant's argument that the district court lacked authority to commit her for an examination of her mental state at the time of the offense. Defendant asserts that neither 18 U.S.C. § 4242 nor Fed.R.Crim.P. 12.2 authorizes a district court to order such an examination. Defendant further argues the compulsion of a court order, particularly one that restrains the defendant's liberty by committing her or him for the purpose of examination, raises serious constitutional issues which militate against implication of the power under the Criminal Rules.

For purposes of analysis, it is important to separate the questions (a) whether the district court was authorized to order any examination at all, and (b) whether the district court was authorized to order the kind of examination it did. Logically, the second question cannot be reached until the first question is answered affirmatively. More important, the statutory and constitutional concerns raised by the two questions are distinct.

The question whether the district court was authorized to order *any* examination raises, most conspicuously, the question whether there is any statutory or other authority for compelling an examination, and whether a compelled examination may implicate the defendant's Fifth Amendment right against self-incrimination,[1] as well as her

---

1. The Fifth Amendment right against self-incrim-

ination is raised because the defendant is com-

Sixth Amendment rights to counsel[2] and to compel witnesses in her favor.[3]

The circumstances under which an examination can be ordered, and the time, place, and manner of conducting the examination, raise due process concerns about the appropriate limitations on the government's power to restrain the defendant's liberty in order to conduct the examination.

1. *Authority to Order Examination of a Defendant Who Gives Notice of Intent to Present Expert Testimony Regarding Her Mental Condition at the Time of the Alleged Offense.*

We first confront the question whether the district court was authorized to order *any* examination of the defendant under the circumstances of this case. The parties have suggested two provisions which might authorize a court-ordered psychiatric examination of the defendant's mental condition at the time of the offense, 18 U.S.C. § 4242 and Rule 12.2. In light of our conclusion that neither the rule nor the statute authorizes a court-ordered examination, we also consider the courts' inherent authority to order an examination.

a. *Authority Under 18 U.S.C. § 4242.*

■ Clearly, the defendant could not be committed for the purpose of conducting a psychological or psychiatric examination pursuant to 18 U.S.C. § 4242.[4] Section 4242 *requires* a district court to order a psychiatric or psychological examination of the defendant on the motion of the government "[u]pon the filing of a notice, as provided in Rule 12.2[ (a) ] of the Federal Rules of Criminal Procedure, that the defendant intends to rely on the defense of *insanity*." (Emphasis added.)

Defendant did not give notice of her intent to rely on the defense of insanity, and disclaims any such intent. Rather, she gave notice of her intent "to introduce expert testimony relating to a mental disease or defect or any other mental condition ... bearing on the issue of guilt." Fed.R.Crim.P. 12.2(b).

Section 4242 neither permits nor requires a court-ordered examination by the government regarding the defendant's "mental condition" at the time of the alleged offense when the defendant gives notice of her intent to rely on expert testimony on that subject. *See United States v. Marenghi,* 893 F.Supp. 85, 99 (D.Me.1995).

b. *Authority Under Criminal Rule 12.2(c).*

■ The government argues Rule 12.2(c) of the Federal Rules of Criminal Procedure authorized the court-ordered examination. The structure of the rule is critical to the government's argument, so the full text of Rule 12.2 is set forth in the margin.[5] The

2. pelled to provide testimonial evidence against herself on an element of the crime—her mental state. *See Estelle v. Smith,* 451 U.S. 454, 461–69, 101 S.Ct. 1866, 1872–76, 68 L.Ed.2d 359 (1981), and discussion *infra.*

2. The Sixth Amendment right to counsel may be raised because the court-ordered examination is arguably a "critical stage" of the proceedings at which the defendant should be permitted to have counsel present if she desires. *See Estelle v. Smith,* 451 U.S. 454, 470–71, 101 S.Ct. 1866, 1876–77, 68 L.Ed.2d 359 (1981).

3. The Sixth Amendment right to compel witnesses in the defendant's favor is raised by the potential sanction under Fed. R.Crim. P. 12.2(d) if the defendant refuses to submit to a court-ordered examination: exclusion of her expert testimony regarding her mental condition.

4. Indeed, the government does not argue that the examination of the defendant here was permitted by § 4242. The *potential* applicability of that

statute has been raised by the *defendant,* perhaps prompted by concern that the statute might be considered applicable because of the related nature of the defenses of insanity and diminished capacity. The government has not responded to defendant's argument that § 4242 does not authorize a court-ordered psychiatric examination of the defendant here. Rather, it bases its assertion of a right to examination solely on Fed. R.Crim.P. 12.2(c).

5. Fed.R.Crim.P. 12.2 provides:

(a) **Defense of Insanity.** If a defendant intends to rely upon the defense of insanity at the time of the alleged offense, the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. If there is a failure to comply with the requirements of this subdivision, insanity may not be raised as

government argues the identical syntactic structure of the first sentences of subdivisions (a) and (b) implies that notice of either an insanity defense or an intent to introduce psychiatric evidence of mental condition at the time of the offense may present an "appropriate case" for a court-ordered examination under subdivision (c). Furthermore, the government asserts, the separate sanction provided in subdivision (d), which allows the district court to exclude expert testimony if the defendant fails "to give notice when required by subdivision (b)" or "to submit to an examination when ordered under subdivision (c)," makes little sense if the only possible examination is for insanity. Finally, the government contends the stated purpose of the notice requirement—to avoid delay—implicitly assumes the government is entitled to conduct its own expert examination of the defendant before trial.

The essence of the government's argument is as follows: A defendant who gives notice of intent to introduce expert testimony may be "an appropriate case" under Rule 12.2(c), which would permit the court to order "an examination pursuant to 18 U.S.C. 4241 or 4242." While it may be possible to read Rule

12.2(c) in this fashion, to base this conclusion on the similar *syntactic* structure of subdivisions (a) and (b) is misleading. The similarity between the first sentences of subdivision (a) and (b) only concerns the timing and manner in which the defendant is required to give notice to the government. Similarities regarding such mechanics do not demonstrate an intent that the subject of the notice should be treated similarly for all purposes under the rule.

On the other hand, the *facts* of which the defendant is required to give notice under subdivisions (a) and (b) differ, in a highly significant way. Subdivision (a) directs the defendant to give notice of his or her intent "to rely upon the defense of insanity," while subdivision (b) directs the defendant to give notice of her or his intent "to introduce expert testimony...." As Congress has already recognized in 18 U.S.C. § 4242, an insanity defense will necessarily put in issue a very specific question regarding the defendant's mental condition at the time of the offense,[6] and will therefore require that the government be permitted to examine the defendant on request.[7] By contrast, the intro-

a defense. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

(b) **Expert Testimony of Defendant's Mental Condition**. If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of guilt, the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

(c) **Mental Examination of Defendant**. In an appropriate case the court may, upon motion of the attorney for the government, order the defendant to submit to an examination pursuant to 18 U.S.C. 4241 or 4242. No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, no testimony by the expert based upon such statement, and no other fruits of the statement shall be admitted in evidence against the defendant in any criminal proceeding except on an issue respecting

mental condition on which the defendant has introduced testimony.

(d) **Failure to Comply**. If there is a failure to give notice when required by subdivision (b) of this rule or to submit to an examination when ordered under subdivision (c) of this rule, the court may exclude the testimony of any expert witness offered by the defendant on the issue of the defendant's guilt.

(e) **Inadmissibility of Withdrawn Intention**. Evidence of an intention as to which notice was given under subdivision (a) or (b), later withdrawn, is not, in any civil or criminal proceeding, admissible against the person who gave notice of the intention.

6. Whether "at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality of the wrongfulness of his acts." 18 U.S.C. § 17(a).

7. The constitutional issues involved in compelled examinations regarding insanity are themselves not entirely resolved. *See United States v. Byers*, 740 F.2d 1104 (D.C.Cir.1984). These issues are not before the Court today, however. To the extent relevant to this analysis, the Court will assume the constitutionality of compelled examinations regarding insanity.

duction of expert testimony regarding a mental condition, disease, or defect does not particularly suggest the need for an examination of the defendant, let alone require it.

The kinds of expert testimony which could be presented regarding the defendant's mental condition may vary widely. For example, the defendant may seek to present expert testimony about the effects of mental retardation or a developmental disability. The expert testimony could concern a psychiatric disorder such as schizophrenia or paranoia. Expert testimony may generally describe the effects of a particular condition, relying on other evidence to establish the defendant suffered from that condition, or it may particularly concern the defendant, based on examination or observation.

The Advisory Committee Notes to the 1983 revision of Rule 12.2(b) make clear that the rule was intended to require the defendant to provide notice of any of these kinds of expert testimony. But unlike a claim of insanity, a mental condition, disease or defect requires a case by case analysis to determine whether a psychiatric or psychological examination of the defendant will be necessary for the government fairly to rebut the defendant's expert evidence.

It could be argued that Congress included the phrase "in an appropriate case" for this very reason. However, the rule's specific reference to 18 U.S.C. §§ 4241 and 4242 inhibits such an interpretation. These statutes apply only in specific circumstances. Section 4241 provides for an examination of the defendant's competency to stand trial (if there is reasonable cause to question the defendant's competency); section 4242 requires an examination regarding a claim of insanity, at the government's request. If the Supreme Court or Congress had intended Rule 12.2(c) to permit examinations in a broader array of cases, why did it not permit the court to order an examination "in an appropriate case" "pursuant to 18 U.S.C. § 4247," the general provision regarding psychiatric and psychological examinations? Why refer to both § 4241 and § 4242, when a reference to one or the other would more clearly demonstrate which set of procedures Congress intended to be applicable?

It is more reasonable to conclude that the intent of the first sentence Rule 12.2(c) was to permit the court to consider the potential applicability of § 4241 and 4242 in connection with required notices regarding mental conditions. While a suggestion of mental disease or defect at the time of the alleged offense does not itself permit or require a competency examination, for example, a history of mental disease is a factor the court should consider along with other factors such as the nature of the disease and the court's own observations. A notice of intent to assert an insanity defense will require the court to order an examination at the government's request.

Some federal courts have ordered psychiatric examinations pursuant to Rule 12.2(c) or have suggested that such an examination would be appropriate when a defendant gives notice of intent to present expert testimony regarding her or his mental condition. *See, e.g., United States v. Stackpole*, 811 F.2d 689, 697 (1st Cir.1987); *United States v. Buchbinder*, 796 F.2d 910, 915 (7th Cir.1986) (finding the government had been prejudiced by lack of notice of the defendant's intent to present expert testimony because it "did not have sufficient time prior to trial to have the defendant examined by its own expert witnesses"); *United States v. Halbert*, 712 F.2d 388 (9th Cir.1983); *United States v. Vega–Penarete*, 137 F.R.D. 233 (E.D.N.C.1991); *United States v. Banks*, 137 F.R.D. 20 (C.D.Ill.1991); *cf. United States v. Rauer*, 963 F.2d 1332, 1334 (10th Cir.1992) (noting that the district court had ordered psychiatric examination pursuant to Rule 12.2(c) and 18 U.S.C. § 4242 following defendant's notice pursuant to Rule 12.2(b)). The reasoning of some of these cases bears examination.

While noting that 18 U.S.C. §§ 4241 and 4242 only authorize psychiatric testing to determine competency or sanity, the district courts in *Vega–Penarete* and *Banks* each proceeded to examine whether Rule 12.2(c) "authorizes a court to order psychiatric evaluation of a defendant who intends to rely on a mental incapacity defense other than insanity." *Banks*, 137 F.R.D. at 21. Because a straight reading of the rule did not provide an answer, the courts turned to the Advisory

Committee Notes accompanying the rule, and concluded it was "apparent that the drafters of Rule 12.2(c) intended to allow the government to examine a defendant who intends to rely upon expert testimony regarding a mental condition." *Banks,* 137 F.R.D. at 22; *Vega–Penarete,* 137 F.R.D. at 235. The Advisory Committee Notes on which these courts relied state, in pertinent part:

> Because it is possible that the defendant will submit to examination by an expert of his own other than a psychiatrist, it is necessary to recognize that it will sometimes be appropriate for defendant to be examined by a government expert other than a psychiatrist.

This commentary addresses the *kinds* of expert testimony the defendant might seek to introduce, and the *kind* of expert examination the government might seek, not the circumstances under which a defendant could be compelled to submit to an examination. We therefore conclude this commentary provides no insight into the question whether Rule 12.2(c) was intended to permit the court to order an examination of a defendant who gives notice of an intent to introduce expert testimony regarding her or his mental condition at the time of the alleged offense.

The commentary to the 1983 revision of Rule 12.2(b) provides a more telling analysis of the purpose of Rule 12.2(b)'s notice requirement and its impact on the question whether Rule 12.2(c) should be read to permit the government to compel an examination of the defendant:

> ... in all circumstances in which the defendant plans to offer expert testimony concerning his mental condition at the time of the crime charged, advance disclosure to the government will serve "to permit adequate pretrial preparation, to prevent surprise at trial, and to avoid the necessity of delays during trial." 2 *ABA Standards for Criminal Justice* 11–55 (2d 1980). Thus, while the district court in *United States v. Hill,* 481 F.Supp. 558 (E.D.Pa.1979), incorrectly concluded that present rule 12.2(b) covers testimony by a psychologist bearing on the defense of entrapment, the court quite properly concluded that the government would be seriously disadvantaged by

lack of notice. This would have meant that the government would not have been equipped to cross-examine the expert, that any expert called by the government would not have had an opportunity to hear the defense expert testify, and the government would not have had the opportunity to conduct the kind of investigation needed to acquire rebuttal testimony on defendant's claim that he was especially susceptible to inducement. Consequently, rule 12.2(b) has been expanded. . . .

Notes of Advisory Committee on Rules, 1983 Revision to Rule 12.2(b).

The commentary notably does not suggest the government would be prejudiced if it were not given sufficient notice to enable it to examine the defendant. As the commentary implies, the government can prepare to meet expert defense evidence in a variety of ways, including the retention of a government expert to attend at trial and assist the government in cross-examination, and review of evidence relied upon by the defense expert. Thus, the need for advance notice of expert evidence does not imply a court-ordered examination of the defendant is intended or appropriate. The commentary to Rule 12.2(b) does not demonstrate the drafters intended the notice to prompt a court-ordered examination of the defendant under Rule 12.2(c).

A portion of the commentary to Rule 12.2(c) may explain the lack of any discussion in the commentary to Rule 12.2(b) regarding an examination of the defendant's mental condition at the time of the offense:

> The last sentence of subdivision (c) has been amended to more accurately reflect the Fifth Amendment considerations at play in this context. See *Estelle v. Smith,* 451 U.S. 454[, 101 S.Ct. 1866, 68 L.Ed.2d 359] (1981), holding that self-incrimination protections are not inevitably limited to the guilt phase of a trial and that the privilege, when applicable, protects against use of defendant's statement and also the fruits thereof, including expert testimony based upon defendant's statements to the expert. *Estelle* also *intimates* that "a defendant can be required to submit to a sanity examination" *and presumably some*

*other forms of mental examination,* when "his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case." (Emphasis added.) Notes of Advisory Committee on Rules, 1983 Amendment to Rule 12.2(c).

We find it unlikely that the Supreme Court or Congress intended the first sentence of Rule 12.2(c) to resolve, *sub silentio,* the Fifth Amendment concerns arising from a compelled, custodial pretrial examination of a criminal defendant concerning her or his mental state at the time of the alleged offense—an element of the crime which the government bears the burden of proving.[8]

For these reasons, we conclude that Rule 12.2(c) did not authorize the district court to order the examination of the defendant regarding her mental condition at the time of the alleged offense.

### c. *Inherent Authority.*

■ While neither Rule 12.2(c) nor 18 U.S.C. §§ 4241 and 4242 authorizes a district court to order a custodial pretrial examination of the defendant concerning his or her mental state at the time of the offense, the statutes and rule do not displace extant in-

herent authority to order a reasonable, non-custodial examination of a defendant under appropriate circumstances. The extent of this authority of course must be determined on a case by case basis. As intimated above, serious—and as yet undecided—constitutional questions are presented. Under the particular circumstances of this case, however, where the defendant has consented to an examination (and therefore waived the privilege against self-incrimination), the Court need not decide these constitutional issues. The district court here has inherent authority to order an examination of the defendant, provided the examination is both reasonable and non-custodial.

We recognize our ruling leaves the district court without detailed guidance for its determinations regarding the terms of the examination. We do so advisedly. The proper parameters of the courts' inherent authority can only be determined based on concrete cases or controversies, after development of the factual and legal issues at the district court level.

### 2. *Due Process*

Because the Court finds no authority for the district court's order committing the defendant for psychiatric or psychological ex-

8. The defendant's statements to the government expert during the examination are unquestionably "testimonial." *Estelle; also see Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). Although court-ordered examinations regarding insanity have generally been found not to violate the Fifth Amendment, the fact that the defendant's mental state is an element of the crime which the government must prove may differentiate a defendant's expert evidence about her or his mental condition from a claim of insanity for purposes of determining whether a compelled pretrial examination of the defendant violates the Fifth Amendment privilege against self-incrimination.

The defendant who claims insanity interjects a new issue into the proceedings on which he or she bears the burden of proof. 18 U.S.C. § 17. The privilege is not violated by an examination, because the examination does not concern an element of the crime. *See Estelle v. Smith,* 451 U.S. 454, 465, 101 S.Ct. 1866, 1874, 68 L.Ed.2d 359 (1981). The limited purpose of the examination concomitantly restricts the use the government can make of it: The results of the examination can only be used to rebut defendant's expert evidence. *Estelle* teaches that a defendant's compelled testimony before a government expert, and the fruits of the examination (i.e., the ex-

pert's conclusions), cannot be used against the defendant in the government's case-in-chief.

When the defendant claims "diminished capacity," however, he or she seeks to undercut the government's proof of an element of the offense. Therefore, any compelled examination will necessarily involve self-incrimination. *Estelle,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359. While Rule 12.2(c) would prohibit the government from introducing the incriminating statements (or expert testimony based on them) unless the defendant introduces testimony regarding mental condition, the existence of an exclusionary rule will not easily justify a compelled examination in the first place. Exclusion is a remedy for a constitutional violation; the defendant should not be precluded from preventing the constitutional violation from occurring.

The issue squarely presented by a government request to examine the defendant regarding his or her mental state at the time of the offense is whether the defendant waives the privilege against self-incrimination by giving notice of intent to introduce expert evidence on that subject. Criminal Rule 12.2 was not intended to resolve this constitutional issue, and we need not and do not decide the issue here.

amination regarding her mental state at the time of the alleged offense, we need not address the subsidiary question whether such an examination violates the defendant's due process rights.

Our ruling today does not preclude the government from examining the defendant pursuant to a voluntary agreement among the parties. An agreed examination may, in fact, be of benefit to a defendant; the government's expert may well agree with his or her defense following the examination. Such a voluntary arrangement could, of course, alleviate the constitutional concerns inherent in a court-ordered examination.

### IV. CONCLUSION

For the foregoing reasons, we find the district court erred by failing to reconsider and vacate its order committing the defendant for purposes of determining her competency to stand trial. We find no authority for the district court's order committing the defendant for purposes of conducting an examination of her mental state at the time of the offense. However, the district court has the inherent authority to order a reasonable, non-custodial examination of the defendant under the circumstances of this case. Accordingly, the district court's order is **REVERSED** and this case is **REMANDED** for further proceedings not inconsistent with this opinion.