NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0316n.06
Filed: April 26, 2005

No. 03-6271

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| SHERIDAN MCMAHAN, | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE: NORRIS AND COOK, Circuit Judges, BECKWITH, District Judge.*

ALAN E. NORRIS, Circuit Judge. Defendant Sheridan McMahan appeals his jury

conviction and sentence for conspiracy to distribute and possession with intent to distribute cocaine,

traveling in interstate commerce to promote an unlawful activity, and use of a communication device

to facilitate the distribution of a controlled substance. He contests the following: 1) whether the

evidence supported a conviction of conspiracy to possess with intent to distribute cocaine, as

opposed to a mere buyer-seller relationship; 2) whether the district court erred in granting the

government's request for a psychological examination of him; 3) whether the district court erred in

refusing to give the requested jury instruction related to entrapment and a buyer-seller relationship;

---

*The Honorable Sandra S. Beckwith, Chief District Court Judge for the Southern District of Ohio, sitting by
designation.

and 4) remaining issues under *Blakely v. Washington*, 542 U.S. ___, 124 S.Ct. 2531 (2004), that affect his sentence.

**I.**

This case originated as a joint state investigation between the North Carolina and Tennessee Bureaus of Investigation and local law enforcement. Special Agent Terry Johnson of the North Carolina State Bureau of Investigation ("NCSBI") was the direct contact with McMahan. Agent Johnson then contacted Tennessee Bureau Investigation ("TBI") Agent Jim Williams, who also investigated McMahan.

On April 4, 2000, Agent Johnson called McMahan, and in a recorded conversation discussed the purchase of two ounces of cocaine. Johnson insisted that he wanted the transaction to occur in North Carolina. The two agreed on the price and scheduled the delivery for April 5th.

On April 5, 2000, McMahan traveled from Tennessee to North Carolina, where he met Agent Johnson and picked up the money. When he left his meeting with Johnson, TBI followed McMahan to the residence of George Mooneyham, his supplier and codefendant in district court. TBI continued to monitor him on his return trip to North Carolina, where he delivered two ounces of cocaine to Agent Johnson.

On April 9, 2000, Agent Johnson contacted McMahan, and in a recorded conversation arranged a deal for April 11, 2000. Johnson requested "three as a sample," but also discussed getting sixteen or more the following Monday. McMahan mentioned his trepidation at delivering all sixteen ounces of cocaine at one time and his preference to make two trips.

On April 11, 2000, McMahan traveled from Tennessee to North Carolina where he met with Agents Johnson and Williams. After picking up the cocaine, McMahan returned to North Carolina to deliver four ounces of cocaine to Johnson. At this time, Johnson mentioned that he wanted twenty ounces the following Monday. McMahan said that he would check with his supplier and would call Johnson to confirm.

On April 14, 2000, Agent Johnson contacted McMahan to confirm plans for the twenty-ounce delivery scheduled for the 17th. McMahan believed his supplier would be able to provide all twenty ounces, but he remained firm that he wanted to deliver the cocaine in two trips on the same day. Johnson mentioned that he could get a kilo of cocaine for less in Atlanta, and McMahan volunteered to drive to Atlanta and fetch the drugs for him.

Two days later, Johnson called McMahan to confirm the April 17, 2000 delivery. McMahan initially wanted to deliver ten ounces on Monday, the 17th, and ten ounces on Wednesday, the 19th. Johnson convinced him to deliver all twenty ounces in two trips on the 17th.

On April 17, 2000, McMahan met with Agents Johnson and Williams in North Carolina. Williams showed him $12,000 for the first ten ounces of cocaine, and the two left to purchase the cocaine from Mooneyham. Law enforcement followed them, and other officers were stationed in the woods behind Mooneyham's house. McMahan drove to his home and left Williams in the car while he called Mooneyham. He told Williams that his supplier was running errands and that they could not complete the transaction for an hour.

Later, McMahan received a phone call. Williams testified that after the call, McMahan's demeanor changed. He left Williams at a store while he went to meet Mooneyham. Williams testified that he was at this location for forty-five minutes to an hour. When McMahan returned, he told Williams that they could not do the deal that day because he could not find his supplier, but that he could get it all the next day. McMahan repeated this same information to Johnson when he and Williams returned to North Carolina.

However, McMahan actually had met with Mooneyham. TBI agents witnessed the meeting, but did not realize that the deal did not take place. When McMahan left, the agents executed a search warrant on Mooneyham. Before the agents executed the search warrant, they observed Mooneyham go behind the barn on his property and into the woods. When Agent James Whitson executed the search warrant, he testified that he entered the woods where he had seen Mooneyham earlier and found a container of cocaine under some leaves.

Because TBI agents already executed the search warrant against Mooneyham, NCSBI agents arrested McMahan when he returned to Agent Johnson in North Carolina. On June 7, 2000, McMahan admitted selling two ounces of cocaine to Agent Johnson. In a separate statement, he admitted selling four more ounces. He identified Mooneyham as his supplier.

McMahan and Mooneyham were indicted and charged with the following: Count 1) conspiracy with the intent to distribute 500 grams or more of cocaine from April 5, 2000 to April 17, 2000, pursuant to 21 U.S.C. § 841(a)(1); Count 2) conspiracy with the intent to distribute a quantity of cocaine from April 5, 2000 to April 17, 2000, pursuant to 21 U.S.C. § 841(a)(1); Count

3) interstate travel–possession with intent to distribute cocaine on April 5, 2000, pursuant to 18 U.S.C. § 1952(a); Count 4) aiding and abetting the possession with the intent to distribute cocaine on April 5, 2000, pursuant to 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; Count 5) interstate travel–possession with intent to distribute cocaine on April 11, 2000, pursuant to 18 U.S.C. § 1952(a); Count 6) aiding and abetting the possession with the intent to distribute cocaine on April 11, 2000, pursuant to 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. §2; Count 7) interstate travel–possession with intent to distribute cocaine on April 17, 2000, pursuant to 18 U.S.C. § 1952(a); and Count 8) use of a telephone to facilitate a violation of 21 U.S.C. § 846, conspiracy to distribute cocaine on April 17, 2000, pursuant to 21 U.S.C. § 843(b).

Both McMahan and Mooneyham proceeded to a jury trial. During trial, McMahan presented evidence that he suffered from diminished capacity due to his low IQ scores. The government presented no expert proof on the issue. The trial resulted in a mistrial for all counts that applied to McMahan.

In its preparation for retrial, the government sought permission to conduct a non-custodial examination of McMahan. On the same day, the government filed an objection to the entrapment instruction the district court gave the jury in the first trial and asked that it not be given at his retrial.

The district court granted the government's request for a noncustodial examination. It provided that, if McMahan should admit to any criminal activity during the examination, it would not be used against him.

Prior to the retrial, McMahan requested that the court include the defense of entrapment in its jury charge. The court denied the request.

McMahan also requested a "buyer-seller" jury instruction. The court denied the motion.

A jury found McMahan to be not guilty of Count 1, but guilty of Counts 2 through 8.

A Revised Presentence Investigation Report ("PSI Report") calculated the applicable guideline range to be 63 to 78 months, based upon a total offense level 26[1] and criminal history category I[2].

McMahan objected to the Revised PSI Report on the following grounds: its conversion of $12,000 cash from the April 17 transaction into a commensurate drug quantity for the travel count and the use of twenty ounces of cocaine as the agreed-upon quantity for the phone count. McMahan filed a Sentencing Memorandum and Motion for Downward Departure on the grounds of diminished capacity, imperfect entrapment, and physical condition.

The district court did not find merit in the argument that it was precluded from converting the $12,000 into ten ounces of cocaine for sentencing purposes. It noted that *United States v. Keszthelyi*, 308 F.3d 557, 576-77 (6th Cir. 2002), allowed the conversion of seized funds into an

---

[1]An offense level of 26 is based upon the quantity with the highest offense level. In this case, that would be Count 8, using a communication device to sell twenty ounces or 567 grams of a controlled substance.

[2] The 2002 version of the Sentencing Guidelines was used.

equivalent amount of drugs. The court held that proof showed beyond a reasonable doubt that McMahan intended to purchase ten ounces of cocaine with the $12,000.

The court also denied McMahan's objection to the use of twenty ounces of drugs in the calculation of the offense level. It determined by a preponderance of the evidence that the proper quantity of drugs was 26 ounces, or 737 grams: two ounces of cocaine on April 5, 2000, four ounces of cocaine on April 11, 2000, and a failed plan to distribute twenty ounces of cocaine on April 17, 2000. The court concluded that there was no violation under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because McMahan's Guidelines range of 63-78 months was within the statutory range of up to twenty years under 21 U.S.C. § 841(b)(1)(C) (Count 2). *See United States v. Solorio*, 337 F.3d 580, 596-97 (6th Cir.), *cert. denied*, 1540 U.S. 1063 (2003).

In a separate hearing, the district court evaluated McMahan's claim that he was entitled to a two-level safety valve reduction under United States Sentencing Guidelines ("U.S.S.G.") §§ 2D1.1(b)(6) & 5C1.2(a) for truthfully providing the government with information related to the offense. The district court entered an order denying the reduction. It determined that McMahan had failed to disclose truthfully all information related to the April 17, 2000 transaction.

The district court sentenced McMahan to 63 months of incarceration, followed by three years of supervised release. The incarceration was comprised of 63 months for Counts 2, 4, and 6; 60 months for Counts 3, 5, and 7; and 48 months for count 8. All terms were to be served concurrently.

**II.**

We first turn to the issue of the sufficiency of the evidence. "In addressing sufficiency of the evidence questions, this Court has long declined to weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. Instead, we look only to whether after reviewing 'the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.'" *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir. 1994) (internal citations omitted).

In order to obtain a conviction for conspiracy, the government "must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990), (quoting *United States v. Stanley*, 765 F.2d 1224, 1237 (5th Cir. 1985)). A conspiracy does not require proof of a formal agreement. *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999). A "tacit or mutual understanding among the parties is sufficient to qualify as an agreement in a conspiracy charge." *Id.* (internal quotation marks and citation omitted).

We believe that a rational trier of fact could have concluded that McMahan conspired with Mooneyham to distribute cocaine. When Agent Johnson contacted McMahan on April 4, 2000, in order to purchase two ounces of cocaine, McMahan responded that he had to "hook up with his man" and agreed to provide the cocaine the next day. Furthermore, when they discussed future deals, McMahan said he would have to talk with his "Newport source" who did not do deals with just anyone. There was evidence presented to the jury that supported its conclusion that a conspiracy existed between McMahan and Mooneyham.

Next, we consider whether it was appropriate for the district court to allow the government to conduct a psychological examination of McMahan. He acknowledges that the district court is authorized to order a reasonable, non-custodial psychological examination when a defendant raises a defense presenting evidence of diminished capacity. *United States v. Davis*, 93 F.3d 1286, 1293 (6th Cir. 1996).

The government was entitled to a psychological examination in this case. McMahan raised diminished capacity in his entrapment defense. As *Davis* makes clear, "unlike a claim of insanity, a mental condition, disease or defect requires a case by case analysis to determine whether a psychiatric or psychological examination of the defendant will be necessary for the government fairly to rebut the defendant's expert evidence." *Id.* at 1293. The district court also correctly referred to Rule 405(b) of the Federal Rules of Evidence, which says, "in cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may...be made of specific instances of that person's conduct." McMahan raised the defense of entrapment, and the propensity to commit a crime was an essential element of the defense. Because the government was entitled to rebut McMahan's entrapment defense, the psychological examination was appropriate.

McMahan further argues that the district court did not properly protect his Fifth Amendment right against self-incrimination and contends that the statements of Dr. Schacht, who conducted the psychological examination, violated his right against self incrimination. In Dr. Schact's testimony, he mentioned that McMahan was unwilling to discuss the details of the offense. In context, this testimony relates to the medical conclusions he could reach regarding McMahan's IQ and does not

pass judgment upon McMahan's decision to invoke his Fifth Amendment rights. Furthermore, the district court limited Dr. Schacht's testimony by prohibiting the admission of any criminal activity charged in the pending indictment against him. More importantly, no self incriminating statements were introduced at trial. Thus, we hold that the district court properly protected McMahan's Fifth Amendment rights.

McMahan also contests the district court's decision not to give a jury instruction regarding entrapment or a mere buyer-seller relationship. A court reviews the jury instruction as a whole to determine whether it fairly and accurately submits the issues and law to the jury. *United States v. Newcomb*, 6 F.3d 1129, 1132 (6th Cir. 1993). "A refusal to give requested instructions is reversible error only if: (1) the instructions are correct statements of the law; (2) the instructions are not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the defendant's theory of the case." *United States v. Kelley Technical Coatings, Inc.*, 157 F.3d 432, 441 (6th Cir. 1998).

An entrapment instruction is required only where the evidence supports such a defense. *See United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002). "A valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *Id.* Defendant must present evidence supporting both elements of entrapment to merit the instruction. *Id.* Evidence of predisposition includes:

> 1) the character or reputation of the defendant, including any prior criminal record;

> 2) whether the suggestion of the criminal activity was initially made by the Government;
> 3) whether the defendant was engaged in the criminal activity for profit;
> 4) whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and
> 5) the nature of the inducement or persuasion supplied by the government.

*Id* at 365.

McMahan's argument supporting entrapment is two-fold: first, he asserts that he suffers from diminished capacity, which caused him to be susceptible to the government's inducements; second, he raises sentencing entrapment because the government convinced him to agree to increasing increments of two, then four, then twenty ounces of cocaine.

In response to McMahan's contention that he suffers from diminished capacity, we note that the district court refused to grant McMahan a downward departure based on diminished capacity and held that "at the time of this offense, the defendant did not have a significantly reduced mental capacity because he did not have a significantly impaired ability to understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason." Order, September 19, 2003 at 6. Since this reasoning is convincing, he was not entitled to an entrapment instruction based on an argument that he suffers from diminished capacity.

Furthermore, he is not entitled to argue sentencing entrapment on appeal because he failed to raise that claim to the district court. The proffered instruction he requested and received in the first trial, and requested again in the second, asked only for a standard entrapment instruction. He never specifically requested a jury instruction related to sentencing entrapment.

McMahan also disputes the district court's denial of a buyer-seller jury instruction. However, the evidence did not support a buyer-seller relationship. The district court pointed out that McMahan purchased cocaine for resale in a three-way transaction with Mooneyham and Agent Johnson, not for personal consumption. Moreover, a "buyer-seller instruction is unnecessary if the district judge has given a complete instruction reciting all the elements of conspiracy and requirements for membership in a conspiracy." *Riggs v. United States*, 209 F.3d 828, 833 (6th Cir. 2000). Here, the district court gave a complete instruction on conspiracy.

Finally, McMahan objects to his sentence pursuant to *Blakely* under three different theories: 1) the district court incorrectly sentenced him for 737 grams when the jury acquitted on Count 1 of the indictment, conspiracy with the intent to distribute more than 500 grams of cocaine, and convicted on Count 2, conspiracy with the intent to distribute a quantity of cocaine; 2) the district court wrongly converted $12,000 that he possessed at the time of his arrest to ten ounces of cocaine for sentencing purposes, without the benefit of a jury verdict finding the specific drug quantity; and 3) the court denied him a safety-valve reduction on the grounds that he did not truthfully provide the government with all information he knew concerning the offense according to U.S.S.G. § 5C1.2(a)(5) and did not submit this issue to the jury for factfinding.

McMahan properly preserved his objection to the first issue by raising *Apprendi* before the district court, but he failed to object to the other two issues, and therefore, did not properly preserve them for review. We recently held, however, that when there is a genuine Sixth Amendment conflict under mandatory Guidelines, the sentence cannot survive "plain error" review and must be

remanded for resentencing.  *See United States v. Oliver*, 2005 WL 233779 (6th Cir. Feb. 2, 2005).

The Supreme Court addressed the application of *Blakely* in *United States v. Booker*, 543 U.S. __, 125 S.Ct. 738 (2005).  It noted that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756 (reaffirming *Apprendi*).  The decision makes clear, however, that the Sixth Amendment conflicts raised in *Booker* turned upon the mandatory nature of the Guidelines.  *Id.* at 750.

In regard to the drug quantity determination, we conclude that the district court violated McMahan's Sixth Amendment rights by sentencing him under mandatory Guidelines for a greater drug quantity than the jury determined beyond a reasonable doubt.  McMahan admitted to selling 170 grams of cocaine.  The jury's verdict is inconclusive as to the quantity of cocaine for the final, uncompleted sale. *See United States v. Hines*, 398 F.3d 713, 722 (6th Cir. 2005) ("Where the jury memorializes a specific factual finding, such as the amount of drugs . . . , we will adhere to that finding.  And where the jury made no finding, . . . it is improper to speculate.")  The quantity of cocaine for which he actually acknowledged guilt qualifies him for sentencing pursuant to level 18 of the U.S.S.G. § 2D1.1(c) (2002 edition).   That sentence, consistent with the Sixth Amendment, would be 27 to 33 months.  McMahan was actually sentenced was 63 months. We therefore remand to the district court for resentencing.

Next, we turn to whether the district court correctly converted the $12,000 that McMahan possessed at the time of his arrest to ten ounces of cocaine for sentencing purposes. Because the jury did not determine a drug quantity for Count 7 (possession with the intent to distribute for the uncompleted sale), it cannot be said that this fact was proved to a jury beyond a reasonable doubt. Therefore, we find plain error and remand this issue to the district court as part of resentencing.

While *Booker* held that the Guidelines are no longer mandatory, we recently held that "[s]entencing courts must still take the guidelines into account and must construe the guidelines properly in doing so. On remand, it will be up to the district court to determine (subject to the possibility of review by this court for reasonableness) what sentence [McMahan] should receive under the post-*Booker* dispensation, taking into account what the guidelines say in their precatory voice and giving appropriate consideration to the statutory factors that have always been relevant under the Sentencing Reform Act of 1984." *United States v. Forrest*, __F.3d__, 2005 WL 711819 at *4 (6th Cir. March 30, 2005).

Finally, we address whether the district court properly denied the safety-valve reduction that McMahan requested. A safety valve reduction is appropriate if the defendant meets the five criteria set forth in U.S.S.G. § 5C1.2(a). The district court concluded that McMahan did not meet the fifth criterion: truthfully providing all information regarding the offense to the government.

It is unnecessary for us to determine whether the district correctly determined that McMahan did not truthfully provide all information regarding the offense to the government. We note that "safety-valve relief is intended to avoid imposition of mandatory minimum sentences" that are required under U.S.S.G. § 5G1.1(b) when the statutorily required minimum sentence is greater than

the maximum applicable Guidelines range. *United States v. Anton*, 380 F.3d 333, 335 (8th Cir. 2004). Because the statutory minimum for all counts under which McMahan was convicted was zero, a safety-valve reduction was unnecessary, regardless of whether he met all five criteria in U.S.S.G. § 5C1.2(a).

## III.

The conviction should be **affirmed,** but the sentence is **vacated** and **remanded** for further proceedings pursuant to the majority opinion authored by Justice Breyer in *Booker*.