NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0101n.06

Case No. 23-5470

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**FILED**
Mar 06, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| ANTONIO TAYLOR, | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |
| | ) | |

Before: SILER, COLE, and MATHIS, Circuit Judges.

COLE, Circuit Judge. After the district court found that he was competent to stand trial, Antonio Taylor pleaded guilty to five offenses related to assault, kidnapping, and possession of a stolen firearm. Taylor argues that, in making its legal competency determination, the district court gave improper weight to one psychologist's testimony and consequently disregarded evidence in the record of Taylor's personality disorders. Because the district court's decision does not amount to clear error, we affirm.

## I.

On June 17, 2021, while Taylor was on supervised release for a previous conviction, a federal probation officer visited Taylor at his home for a check-in visit. During that visit, Taylor assaulted the probation officer, took her employer-issued gun, and struck her in the forehead with the gun. Taylor then dragged her to his bedroom where he raped her repeatedly for approximately three hours. Taylor eventually allowed the probation officer to leave, but he kept her gun. On

August 17, 2021, a grand jury in the Western District of Tennessee indicted Taylor with assaulting a federal officer, kidnapping a federal officer, knowingly possessing a stolen gun, being a felon in possession of a gun, and using a gun during a crime of violence. (Indictment, R. 2, Page ID 4−6.)

On September 7, 2021, Taylor's counsel moved for a mental competency evaluation pursuant to 18 U.S.C. §§ 4241 and 4242. A yearlong dispute over Taylor's competency followed, resulting in two evaluations, a lengthy competency hearing, and two change-of-plea hearings. We briefly summarize the relevant parts of the record regarding this dispute below.

At the behest of Taylor's defense counsel, Dr. Megan Avery, a licensed psychologist, conducted the first competency evaluation on October 1, 2021. Dr. Avery's evaluation consisted of a two-hour clinical interview with Taylor, her observations of Taylor speaking with his counsel, clinical tests related to mental functioning and academic skills, and a test designed to detect the feigning or exaggeration of mental disorders. Dr. Avery also interviewed Taylor's mother, Tonya Taylor, and reviewed certain records of Taylor's medical history. On November 24, 2021, Dr. Avery completed her report and concluded that Taylor was not competent to stand trial. Dr. Avery diagnosed Taylor with "Schizoaffective Disorder," "Antisocial Personality Disorder," "malingering," and alcohol and cocaine use disorders. (*Id.* at PageID 62.) Her report defined "malingering" as "the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as evading criminal prosecution." (*Id*. at PageID 63) Notably, Dr. Avery's report also stated that "[m]alingering interfered with a completely accurate assessment of [Taylor's] competency," and that "[a] competency study in a prison setting (i.e., in the Bureau of Prisons) will also allow for more observation to delineate which symptoms are psychosis and which are attributed to malingering." (*Id.* at PageID 64.)

The government requested a second competency evaluation on December 2, 2021, which the court granted. Dr. Lisa Feldman, a forensic psychologist, observed Taylor for a three-month period at the BOP Federal Detention Center in Miami, Florida, from January to April 2022. Dr. Feldman's evaluation similarly included a detailed review of Taylor's medical records, general background, and criminal history. And Dr. Feldman also reviewed the "extensive records" available to her from the BOP's "Psychology Services" team that had repeatedly evaluated Taylor during a previous five-and-a-half-year period of incarceration starting in 2015. (*Id.* at PageID 144.)

In contrast to Dr. Avery, Dr. Feldman was not able to interview Taylor because he refused to participate in an intake evaluation or submit to testing. (*Id.*) But Dr. Feldman's psychological team and other members of the BOP correctional staff continued to have contacts with Taylor and observed him during this three-month period, which was done to "obtain a broader understanding of [Taylor's] adaptive and interpersonal skills." (*Id.*) Dr. Feldman issued her report on April 29, 2022, concluding that Taylor was competent to stand trial. (*Id.* at Page ID 139, 154) (stating "[Taylor] demonstrated no active mental states that would interfere with his rational understanding of the proceedings against him or his ability to assist toward his defense, if he was motivated to do so".) She also diagnosed Taylor with malingering and antisocial personality disorder. With respect to malingering in particular, Dr. Feldman explained that "[t]hroughout the evaluation, Mr. Taylor's behavior appeared purposeful and under his volitional control." (*Id.* at 154)

The district court conducted a competency hearing on August 18, 2022, where it heard testimony from Dr. Avery, Dr. Feldman, Taylor's mother, and Taylor's aunt, Ladaria Taylor. The government presented supplemental evidence that they argued demonstrated Taylor's competency, including jail phone records where Taylor expressed to his mother that he needed a lawyer, records

of Taylor's requests for medical treatment while incarcerated, and records of Taylor's previous appearances in court where he seemingly understood the nature of the proceedings.

Both psychologists' testimony largely paralleled the conclusions found in their reports. Importantly, Dr. Avery clarified that Taylor "probably" was not competent to stand trial, but she could not "be 100 percent certain . . . because of the malingering. And [the] next step would be to refer [Taylor] to the [BOP] for a more extensive study." (Competency Hr'g Trans., R. 62 at PageID 236.) Regarding the other witnesses, Tonya and Ladaria Taylor's collective testimony reflected that, when he was as a minor, Taylor (1) was diagnosed with bipolar disorder, possible schizophrenia, and a learning disability; (2) had general behavioral issues related to his diagnoses that resulted in frequent altercations—often physical—with other children and family members; and (3) was incarcerated on multiple occasions, which was traumatic for him and only intensified his poor behavior. Taylor's mother also noted that Taylor's mental instability may stem from a brain injury he sustained during a suicide attempt at age 20; specifically, that "oxygen was cut off from [Taylor's] brain," and she was told that he would "never be the same mentally." (*Id.* at Page ID, 253)

The district court then found that Taylor was competent to stand trial. Taylor thereafter pleaded guilty to all five counts in the indictment. Taylor now brings this appeal.

II.

The competency determination "is a question of fact [that] we review for clear error." *United States v. Dubrule*, 822 F.3d 866, 875 (6th Cir. 2016) (quotation marks omitted). The bar for incompetency is high, and we will not reverse the district court's finding unless "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. Gypsum*

*Co.* 333 U.S. 364, 395 (1948)). As such, "[i]n the absence of such a definite and firm conviction, we cannot reverse the district court's findings—even if '[we] would have weighed the evidence differently.'" *Dubrule*, 822 F.3d at 875 (alteration in original) (quoting *Anderson*, 470 U.S. at 574).

III.

Taylor entered his guilty plea after the district court found that he was competent to stand trial for the five counts in the indictment. *See Godinez v. Moran*, 509 U.S. 389, 397−98 (1993). To be competent to stand trial, the defendant must possess (1) "a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and (2) "a rational as well as factual understanding of the proceedings against him." *Dubrule*, 822 F.3d at 875 (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). In making this determination, a court should consider evidence including that of "irrational behavior, the defendant's demeanor at trial and any prior medical opinion concerning competence to stand trial." *United States v. Prigmore*, 15 F.4th 768, 776 (6th Cir. 2021) (quotation marks omitted).

Here, given the district court's reliance on multiple portions of the record to make its factual determinations, "[w]e see no error in the district court's competency finding, let alone clear error." *Id.* at 776. Prior to making its competency determination, the district court conducted an extensive hearing where it considered the testimony of two psychologists, discussed those psychologists' competency evaluations at length, and heard testimony from Taylor's family members. The district court also considered supplemental evidence that was relevant to Taylor's competency, including records of Taylor's jail phone calls, his requests for medical treatment while incarcerated, his previous appearances in court, and a competency evaluation performed by Dr. Ron Nieberding—a clinical psychologist—that found that Taylor was competent to stand trial for a felon-in-possession charge in 2015.

The district court's order addressed both psychologists' reports and other portions of the record to highlight that Taylor (1) expressed a need for a lawyer over the phone, (2) stated that his "charges [were] 'bad'," (3) discussed the severity of kidnapping and sex charges with his lawyer in front of Dr. Avery during the evaluation, (4) asked jurisdictional questions, and (5) "articulate[d] the role of the judge and defendant . . . [and] also expressed that this attorney's role is to 'represent him.'" (Sealed Order, R.67, PageID 690−93). Taylor also expressed an understanding of the specific charges against him and discussed the underlying facts of the case in previous status conferences and court appearances. This cumulative evidence, along with Dr. Feldman's report, permitted the court to conclude that Taylor had a sufficient present ability to consult with his lawyer, and likewise had a rational understanding of the legal proceedings against him. (Sealed Order, R.67, PageID 691.) The facts emphasized here closely resemble the types of evidence our precedent has instructed district courts to review when making this determination. *See United States v. Miller*, 531 F.3d 340, 348 (6th Cir. 2008).

Taylor's primary rebuttal is that "the District Court based its [competency determination] almost exclusively on Dr. Feldman's opinion that [Taylor] was malingering," and he consequently asserts that the district court "disregarded/discounted [his] severe personality disorders." (Appellant Br. at 37−39.) His argument, however, fails on both legal and factual grounds.

First, as the district court acknowledged, the presence of a mental illness *alone* does not categorically mean that a defendant is mentally incompetent to stand trial. (Sealed Order, R. 67, PageID 685−86) (citing *United States v. Davis*, 93 F.3d 1286, 1290 ("[I]t does not follow that because a person is mentally ill he is incompetent to stand trial.")). Taylor's briefing focuses almost exclusively on his personality disorder diagnoses. He connects these disorders to certain challenging behaviors—such as his "disorganized behavior and speech," "violent verbal

outbursts," and the "physical altercations" resulting from his outbursts—to argue that these behaviors prove legal incompetence. (Appellant Br. at 50, 56, 59.) But "[o]ur caselaw is replete with instances of criminal defendants who exhibit[t] bizarre behavior . . . [but] nonetheless me[e]t the Constitution's competency standard." *Prigmore*, 15 F.4th at 776–77 (collecting cases). Further undermining what Taylor argues here, "[i]n some of those cases, that behavior [also] apparently stemmed from severe personality disorders." *Id.* at 777 (reiterating that "a severe personality disorder is not alone sufficient to make one legally incompetent to stand trial").

Second, as explained in detail above, Dr. Feldman's conclusion that Taylor was malingering was only one factor in the district court's competency determination, and the malingering finding was not, as Taylor argues, the linchpin of the court's analysis. (*See generally* Sealed Order, R. 67, PageID 687−94.) True enough, there are several places in the record suggesting that Taylor was exaggerating certain aspects of his mental health and history to attain favorable treatment and "avoid legal repercussions." The district court was correct to highlight that (1) "[p]ast medical providers have also diagnosed [Taylor] with malingering," (2) "[b]oth psychologists testified that Defendant's malingering [was] intentional," (3) Taylor also exhibited an "exaggerated testing approach" when previously incarcerated, and (4) there were "inconsistencies between what [Taylor] told Dr. Avery during her evaluation and previous BOP reports . . . [,] indicat[ing] that [he] was engaging in deliberate behavior to appear more impaired during his evaluation with Dr. Avery." (R. 67, PageID 682, 689.)

Taylor again attempts to rebut this evidence by arguing that his mental health diagnoses overshadow any evidence of malingering, and that Dr. Feldman's analysis is centered on "a [f]aulty [p]remise." (Appellant Br. at 40−46.) This argument also fails, however, because the district court was entitled to give more weight to Dr. Feldman's opinion and report. *See, e.g.,*

*United States v. Mathis*, 738 F.3d 719, 740 (6th Cir. 2013) (holding no clear error where "the court thoughtfully considered and weighed the testimony from the parties' experts, finding the government's [expert] more persuasive"). Indeed, Dr. Feldman's "opinion was based on a more extensive evaluation of [Taylor], and her conclusions were more thoroughly [supported]" by the BOP's three-month examination than Dr. Avery's report. *See Dubrule*, 822 F.3d at 876. As such, "[o]n review of th[is] record, we cannot say that this finding was clearly erroneous." *Id.*

IV.

On this record, the district court did not clearly err in finding that Taylor was competent to stand trial for the offenses for which he was indicted. Taylor's challenge to his guilty plea therefore fails. For the foregoing reasons, we affirm.